UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MUSAED ALQAMUS,
    Plaintiff,

v.

PACIFIC SPECIALTY INSURANCE COMPANY,
    Defendant.

No. 3:14-cv-00550 (VAB)

**RULING ON MOTION TO DISMISS**

Defendant, Pacific Specialty Insurance Company ("Pacific"), moves to dismiss Counts II and VI of Plaintiff Majedah Nassir's Second Amended Complaint (the "Complaint"). For the reasons that follow, the motion is **GRANTED**.

**I.     FACTUAL AND PROCEDURAL BACKGROUND[1]**

Plaintiffs, Musaed Alqamus and Majedah Nassir, are spouses who co-own a residence at 81 Heather Lane in New Britain. In early 2011, Mrs. Nassir and her children left for an extended trip to visit family in Yemen. On October 3, 2012, while Mrs. Nassir was still in Yemen, a fire broke out in the house, greatly damaging it and its contents. At the time, an insurance policy issued by Pacific covered the house against loss or damage by casualty, including loss or damage due to fire. The policy allegedly did not comply in several respects with Connecticut General Statutes § 38a-307, which sets forth mandatory language required of fire insurance policies issued in Connecticut. The policy contained an eighteen-month suit limitation clause. After the fire occurred and a claim was filed, Pacific allegedly refused to negotiate or adjust the subject loss well into 2014, asserting that the claim was under investigation. Mrs. Nassir initiated this

---

[1] The following allegations are assumed to be true for purposes of evaluating this motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

litigation in April 2014, about sixteen months after the fire occurred. Pacific denied the claim by way of letter dated June 23, 2014. The policy contained terms more restrictive than the language required by Connecticut General Statutes § 38a-307, upon which Pacific relied to deny the claim. The operative complaint [Doc. No. 33] was filed on December 31, 2014.

The Complaint contains six counts, only two of which are the subject of this motion to dismiss: Count II and Count VI.[2] Count II of the Complaint alleges that Pacific violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*, by representing that its residential homeowner's policies, including the one issued to the plaintiff, complied with Connecticut law, when, in fact, the policies used more restrictive language than set forth by statute in violation of Connecticut law. Count VI of the Complaint alleges that losses totaling at least $211,868.94 were sustained due to the fire, and that Pacific's failure to pay the claim constitutes theft under Connecticut General Statutes § 52-564, entitling her to treble damages for her 50% interest in the value of the damaged property, which she co-owned with her husband, *i.e.*, Pacific specifically intended to permanently deprive Mrs. Nassir of $105,934.47 that belonged to her.

---

[2] Count I asserts a breach of contract claim for Pacific's alleged failure to pay money due to Mrs. Nassir under their insurance contract. Count III asserts a claim of bad faith, based on Pacific's alleged unjustifiably delaying and refusing to adjust or negotiate Mrs. Nassir's claim while constructing a case against its other insured, Mr. Alqamus, in bad faith for the purpose of denying the claim as to all insureds. Count IV asserts a claim for negligent infliction of emotional distress allegedly suffered by Mrs. Nassir as a result of Pacific's conduct with respect to her insurance claim. Finally, Count V asserts a claim for breach of the covenant of good faith and fair dealing for Pacific's allegedly knowing and intentional engagement in conduct designed to frustrate Mrs. Nassir's ability to secure the benefits due to her under their insurance contract, such as: failing to implement or follow accepted standards for the investigation and payment of her claims; reneging upon its written agreement with Mrs. Nassir as to the means to resolve disputes that would not have required Mrs. Nassir to incur the loss, cost, and delay inherent in litigation; compelling Mrs. Nassir to resort to litigation to obtain what was due to her under the policy; compelling Mrs. Nassir to resort to litigation to receive what a reasonable person would have expected to receive under the terms of the policy; and delaying or refusing payment of covered losses to cause Mrs. Nassir to suffer from economic distress so that Pacific could use that distress as leverage.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (citations omitted).  When deciding a Rule 12(b)(6) motion to dismiss, a court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Twombly*, 550 U.S. 544, 555-56 (2007); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557 (2007).  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

### III. DISCUSSION

#### A. COUNT II: CUTPA

Pacific argues that the Connecticut Supreme Court's decision in *State v. Acordia, Inc.*, 310 Conn. 1 (2013), requires that Mrs. Nassir's CUTPA claim be predicated on a viable claim under the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-815 *et seq*. In that case, the Connecticut Supreme Court explained that, "in the absence of a CUIPA violation, the CUTPA claim must fail in the context of the present case," 310 Conn. at 10, and "that under the facts of the present case, the CUTPA claim must fail due to the failure of the CUIPA claim," 310 Conn. at 10 n.3.  The *Acordia* court held that "an insurance related practice" only violates CUTPA if it "violates CUIPA or, arguably, some other statute regulating a specific type of insurance related conduct." *Id.* at 37.

In this case, it has been alleged that Pacific violated Connecticut's statutory requirements for fire insurance policies.  At the time of the fire, Connecticut General Statutes § 38a–308 provided in relevant part, "No policy or contract of fire insurance shall be made, issued or delivered by any insurer or any agent or representative thereof, on any property in this state, unless it conforms as to all provisions, stipulations, agreements and conditions with the form of policy set forth in section 38a–307."  Conn. Gen. Stat. § 38a-308 (effective July 1, 2012); *see also Wasko v. Manella*, 269 Conn. 527, 535 (2004) ("The Connecticut legislature has enacted a standard form of fire insurance, with which all fire insurance policies issued in this state must conform.").  The Complaint alleges that "the policy as issued by Defendant contained several clauses more restrictive than the language required by [Conn. Gen. Stat. § 38a-307]." Compl. ¶ 21.  It further alleges that Pacific knowingly and intentionally issued the same defective

policies to Mrs. Nassir and other consumers in Connecticut, while representing that its policies complied with Connecticut statutory requirements for such policies.

As Pacific notes, Connecticut courts apply the "cigarette rule" set forth by the Federal Trade Commission for determining when a business practice is unfair, which entails, in relevant part, determining whether the practice offends public policy as it has been established by statutes, the common law, or otherwise.  *See Acordia*, 310 Conn. at 28, 36-37.  Thus, a CUTPA claim against an insurer arguably could be predicated upon a violation of Connecticut General Statutes sections 38a-307 and 38a-308.

The allegations in this Complaint, however, are too vague and conclusory to state a claim because the federal pleading standard requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted).

The Complaint alleges that "[t]he terms and conditions of the subject policy failed, in several key aspects, to comply with Connecticut General Statutes §38a-307," Compl. ¶ 4, and that "the policy as issued by Defendant contained several clauses more restrictive than the language required by C.G.S. §38a-307," Compl. ¶ 21.  Nowhere does the Complaint discuss which clauses, terms, and conditions of the policy failed to meet the requirements of the statute, nor in what manner they were either "key" or "more restrictive than . . . required."  These allegations are nothing more than "naked assertions devoid of further factual enhancement."

In addition, the Connecticut Supreme Court has held that an alleged unfair insurance claim settlement practice must have been "committed or performed by the defendant with such frequency as to indicate a general business practice" in order to constitute a CUTPA claim, and that "isolated instances of unfair insurance settlement practices are not so violative of the public policy of this state as to warrant statutory intervention." *Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 850-51 (1994). The Complaint's sole allegation concerning whether the alleged wrongdoing was a general business practice is the following: "Upon information and belief, Defendant issued the same defective policy, knowingly and intentionally in violation of C.G.S. §38a-307, to consumers throughout Connecticut, specifically including Plaintiff, from the year 2012 to date, and for some time prior to 2012." Compl. ¶ 21. To the extent that the "general business practice" requirement extends to CUTPA claims predicated on Connecticut General Statutes sections 38a-307 and 38a-308, then this conclusory allegation fails to state a CUTPA claim under *Iqbal* and *Twombly*. *Cf. Ensign Yachts, Inc v. Arrigoni*, No. 3:09-cv-209, 2010 WL 918107, at *17, 2010 U.S. Dist. LEXIS 22425, at *50-51 (D. Conn. Mar. 11, 2010) ("under the *Iqbal* pleading standard, a mere assertion of a general business practice without anything more is insufficient to sustain [plaintiff's] 'CUIPA through CUTPA' claims against [defendants] for violation of Conn. Gen. Stat. § 38a-816(6)"). *See also Bacewicz v. NGM Ins. Co.*, No. 3:08-cv-1530, 2009 WL 1929098, at *2, 2009 U.S. Dist. LEXIS 55204, *6 (D. Conn. June 30, 2009) ("The plaintiffs must present facts that show that the unfair insurance practice occurred with enough frequency for it to be deemed a 'general business practice.'"); *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 117 (D. Conn. 2014) (allegations that insurer "refused to provide coverage in at least three separate instances involving other homeowners experiencing the same damages caused by the same mechanism and involving policy language identical to that in the

6

[plaintiffs'] policy . . . plausibly allege that [defendant] has committed the proscribed act with sufficient frequency to indicate a general business practice").

Therefore, the motion to dismiss Count II is **GRANTED**.

### B. COUNT VI: STATUTORY THEFT

"Statutory theft under § 52-564 is synonymous with larceny under General Statutes § 53a-119." *Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745, 771 (Conn. 2006). "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." Conn. Gen. Stat. Ann. § 53a-119. "[M]oney can be the subject of statutory theft. . . . The plaintiffs must establish, however, legal ownership or right to possession of specifically identifiable moneys." *Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. at 771-72. The "right to the payment of money generally" is not sufficient to state a claim for statutory theft. *Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 284 Conn. 408, 421 (Conn. 2007).

In this case, there is no "specific, identifiable money to which [the plaintiff] had a right of possession." *Kopperl v. Bain*, 23 F. Supp. 3d 97, 103 (D. Conn. 2014) (quoting *Macomber v. Travelers Property and Casualty Corp.*, 261 Conn. 620, 650-51 (Conn. 2002)). Rather, this case concerns a debt allegedly owed under a contract, and thus a statutory theft claim cannot lie. "A mere obligation to pay money may not be enforced by a conversion action . . . and an action in tort is inappropriate where the basis of the suit is a contract, either express or implied." *Deming*, 279 Conn. at 772. Mrs. Nassir's proper claim for relief under the facts alleged in Count VI of the Complaint is the breach of contract claim she asserts in Count I.

Therefore, the motion to dismiss Count VI is **GRANTED**.

7

## IV.     CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss [Doc. No. 44] is

**GRANTED**.


SO ORDERED at Bridgeport, Connecticut, this 29th day of September, 2015.



    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge